A. L. CAHN AND SONS, INC., Plaintiff-Appellee,

v.

GELLMAN MANUFACTURING COMPANY, Defendant-Appellant.

No. 13134.

United States Court of Appeals Seventh Circuit.

Feb. 20, 1961.

Sam M. Arndt, Rock Island, Ill., for appellant.

Robert E. Hunt, Peoria, Ill., Geis, Forman & Schulze, Brooklyn, N. Y., for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and GRUBB, District Judge.

HASTINGS, Chief Judge.

This diversity action was brought by A. L. Cahn and Sons, Inc. (plaintiff) to recover damages from Gellman Manufacturing Company (defendant) for an alleged breach of contract relating to the manufacture of certain bread slicing and wrapping machines. It was charged that defendant did not manufacture the machines in accordance with the terms and conditions of the contract.

Defendant filed a counterclaim to recover damages from plaintiff for an alleged breach of the same contract by plaintiff in refusing to accept the machines. It was alleged that they were manufactured in compliance with the contract terms.

There was a trial before the court without a jury. The court entered findings of fact and stated conclusions of law favorable to plaintiff and entered judgment for plaintiff against defendant on the complaint in the sum of $6,686.33, with interest and costs. Defendant appealed from this judgment.

Defendant's counterclaim was dismissed. No appeal was taken from this judgment of dismissal.

Errors relied on for reversal generally relate to certain factual findings by the court and legal conclusions based thereon charged by defendant to be erroneous. The contested issues arising therefrom will become apparent as we develop the proceeding in the trial court.

Plaintiff is a New York broker primarily engaged in supplying food processing and kitchen fixtures and equipment to commercial consumers. Its principal work is finding buyers for certain equipment and manufacturers who can furnish the equipment for resale at a competitive price. It is not a manufacturer.

Defendant is a manufacturing company located at Rock Island, Illinois. It produces, among other things, a bread slicing and wrapping machine known as the Producer Synchromatic Wrapper and Slicer.

Early in August, 1955, plaintiff learned of a government contract letting for four bread slicing and wrapping machines. The military specifications for these units were MIL-M-2455 A, dated October 24, 1952, hereafter referred to as military specifications.

Plaintiff and defendant had previously done business together. On August 8, 1955, plaintiff mailed defendant, among others, a written invitation to quote a price on the government contract. The invitation was submitted on a printed form with blanks to be filled in by the bidder. A general set of specifications was inserted in the invitation by plain-

tiff, including the following unit description of the machine:

"Bread Slicing and Wrapping Unit, Power Feed, Electric Wrapping Machine, Gear Feed, (cap., 1500 loaves per hour, 60 cy., 3 phase., 220 V., with extra interchangeable head for each machine to cut slices 7/16" thick); in accordance with Military Specification MIL-M-2455 A, dated 24 October 1952."

At the head of this form was the printed notation in large type, "This Is A Quotation Request—Not An Order." There was also the following introductory statement, "Please quote us your lowest jobbers prices and discounts on the materials as specified and in strict accordance with specifications. Variations to be explicitly explained."

Following the unit description on the invitation were printed the following two notes:

"Note: 1. Your quotation on this equipment constitutes a binding promise by you to supply the material at prices quoted for duration of acceptance time." [60 days]

"Note: 2. If the merchandise you manufacture does not meet the specifications, kindly quote on the nearest available item, calling attention to the differences. * * *"

The invitation was completed by defendant and returned to plaintiff by letter of transmittal on August 16, 1955. A unit price of $4,645.86 was quoted for a total of $18,583.44 on the four machines. Question 5 on the form was partially answered as follows:

"5. Are you quoting in exact accordance with specification mentioned?" [*No answer*] "If not, explain how your item is different." [Answered: "Specifications Enclosed."]

The first part of the question was not answered. The second part was answered by defendant by typing in the words, "Specifications Enclosed."

Defendant's letter of transmittal of the price quotation suggested an alternate for the extra interchangeable 7/16" head and requested plaintiff to transmit this information to the government. Defendant had a copy of the military specifications and was familiar with their requirements.

On August 19, 1955, plaintiff submitted its bid to the Chicago Quartermaster Depot (Quartermaster) based on defendant's quotation allowing for a profit to plaintiff of $1,499.96. Plaintiff called attention to the suggested alternate. Quartermaster awarded the contract to plaintiff for the four machines on August 30, 1955 and rejected the suggested alternate.

On September 1, 1955, plaintiff ordered the four machines from defendant by letter, enclosing an executed order form. The order set out the unit description of the machines in the exact manner as given in the request for quotations, with additional pertinent data, and included the following paragraph:

"All in accordance with terms and provisions contained in our Request of 8/8/55, our file c–8–22, and your letter of 8/16/55—as per Specs. item."

On September 8, 1955, defendant wrote plaintiff a letter accepting the "order #D–0837 for 4 Producer Syncro-Matic Combination Wrappers and Slicers" and fixed a delivery schedule of November 1–30.

On September 15, 1955, Quartermaster wrote plaintiff a long letter with reference to its contract. It called attention to government practice during the Korean "affair" of granting deviations from specifications because of emergency conditions during that period. The letter went on to say:

"However, emergent conditions no longer exist and there is no justification for failure to adhere to the specification requirements. MAKE SURE THAT YOUR PRODUCTION PEOPLE KNOW ALL OF THE SPECIFICATION REQUIREMENTS, INCLUDING ALL REFERENCED SPECIFICATIONS."

The letter further stated that Quartermaster "has the very definite policy of procuring and accepting only those supplies which conform to approved specifications as set forth in the contract." Attention was called to testing, inspection and delivery requirements.

In compliance with this letter plaintiff wrote to defendant on September 20, 1955 quoting all of Quartermaster's letter of September 15, 1955 and concluded with the following paragraph, "We are just bringing the above letter to your attention and trust you will be guided accordingly. We feel confident you will live up to the contract." Defendant did not respond to this letter.

On November 11, 1955, defendant wrote to plaintiff that, "We wish to call your attention to the military specifications MIL-M-2455A, which governs this contract," and submitted proof of testing the electrical materials used in the machines as required by the military specifications.

Shortly thereafter, the government inspector approved two of the machines and they were crated. The other two machines were then completed. The first three were rejected by the government when a subsequent inspection disclosed they were gray in color instead of white, as required by the military specifications. Defendant and plaintiff were unsuccessful in their efforts to have Quartermaster waive this deviation.

Further inspection disclosed that the four machines had an oscillating mechanical type conveyor instead of a belt conveyor as required by the military specifications. Because of this deviation Quartermaster finally refused to accept the machines. Plaintiff so advised defendant by letter of March 16, 1956, and defendant replied on March 23, 1956 that it could not manufacture the units with a belt conveyor. Defendant subsequently refused to look elsewhere to fill the order according to military specifications. Plaintiff told defendant to dispose of the machines elsewhere, and this was done.

Subsequently, the government terminated the contract with plaintiff and secured the machines from another source at a total loss to the government of $5,187.57. On demand, plaintiff paid this sum to the government in settlement of its claim for such loss.

The trial court considered all of the documents above mentioned, other documents, and correspondence between the parties and with the government and heard oral testimony of various witnesses concerned in these transactions.

■ A dispute arose whether defendant enclosed its own specifications with its quotation of prices. The trial court resolved this conflict favorable to plaintiff. We need not further lengthen this opinion with a résumé of the oral testimony and other documents and correspondence. It is sufficient to say that we have reviewed the record and find that it amply supports the trial court's findings of fact. We hold that they are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Defendant urged at the trial and argues here that defendant contracted to furnish plaintiff the four machines at a variance with the specified military specifications and so informed plaintiff. We do not agree.

We hold that the trial court correctly found and concluded that defendant contracted to furnish the machines to plaintiff in accordance with the military specifications and failed and refused to do so.

■ We are not here concerned with the niceties of contract law as urged by defendant. The contract was consummated and flowed from the various documents, the order and acceptance above set out. Any ambiguities therein were properly resolved in favor of plaintiff.

The trial court allowed damages to plaintiff based on the amount plaintiff paid to the government in settlement of its claim and plaintiff's loss of profits.

We have considered all of defendant's contentions and find them without merit. The trial court reached a correct result.

The judgment of the district court is Affirmed.